# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-488

**CHARLES LEVINE**

**VERSUS**

**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, ET AL.**

**Consolidated with**

## 23-489

**MICHAEL A. COUVILLION, IN HIS CAPACITY AS SHERIFF OF VERMILION PARISH, ET AL.**

**VERSUS**

**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 107,696
(consolidated with 107,785)
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CHARLES G. FITZGERALD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.

**REVERSED IN PART;**
**AFFIRMED AS AMENDED.**

**Jason M. Welborn**
**Jacob H. Hargett**
**Welborn and Hargett, LLC**
**1540 W. Pinhook Road**
**Lafayette, Louisiana 70503**
**Phone: (337) 234-5533**
**Fax:  (337) 769-3173**
**Counsel for Plaintiff:**
      **Charles Levine**

**Isaac H. Ryan**
**Ike Ryan APLC**
**1100 Poydras Street, Suite 2905**
**New Orleans, Louisiana 70163**
**Phone: (504) 952-0505**
**Counsel for Defendants:**
      **Berkshire Hathaway Specialty Insurance Company**
      **Universal Environmental Services, LLC**
      **Renauldo Hawkins**

**Emily E. Eagan**
**701 Poydras Street, Suite 4800**
**New Orleans, Louisiana 70139**
**Phone: (504) 561-0400**
**Fax: (504) 561-1011**
**Counsel for Defendant:**
      **Berkshire Hataway Specialty Insurance Company**

**Joshua Trahan**
**102 Versailles Boulevard, Suite 400**
**Lafayette, Louisiana 70509**
**Phone: (337) 237-6062**
**Fax: (337) 237-9129**
**Counsel for Defendant:**
      **Universal Environmental Services, LLC**

**Ney Gehman**
**Kimberly G. Anderson**
**3850 North Causeway Boulevard, Suite 1230**
**Metairie, Louisiana 70002**
**Phone: (504) 837-9017**
**Fax: (855) 810-2532**
**Counsel for Defendants:**
      **Renauldo Hawkins**
      **Universal Environmental Services, LLC**
      **Nationwide Agribusiness Insurance Company**

**FITZGERALD, Judge.**

In this appeal, we are asked to review the jury's allocation of fault and award of damages.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

This lawsuit arises from a motor vehicle accident. The relevant facts are not in dispute.

In January 2019, Renauldo Hawkins became distracted while driving a large box truck down U.S. Highway 167 in Vermilion Parish, Louisiana. The box truck was owned by Renauldo's employer, Universal Environmental Services (UES). By all accounts, Renauldo bent down to retrieve a bottle of water while traveling at approximately sixty-five miles per hour and smashed into the back of a Vermilion Parish Sheriff's Office police cruiser being driven by Deputy Sheriff Charles Levine. As a result of the collision, the deputy sheriff suffered serious personal injuries.

In December 2020, Deputy Sheriff Levine filed a damages suit against Renauldo, UES, and UES's primary insurer, Nationwide Agribusiness Insurance Company, alleging negligent acts by Renauldo. In February 2022, Plaintiff filed a first amended petition for damages. The amended petition added UES's excess insurer, Berkshire Hathaway Specialty Insurance Company, as a defendant. The amended petition also asserted direct negligence claims against UES, including negligent hiring, negligent training, and negligent supervision. A jury trial was fixed for September 2022.

It is undisputed that the accident occurred while Renauldo was acting within the course and scope of his employment with UES and that UES is vicariously liable for any damages resulting from Renauldo's negligence. In fact, fourteen days before trial, all Defendants collectively filed a document styled "Defendants' Binding and

Irrevocable Judicial Admissions and Judicial Confessions Regarding Liability" in which they confessed that Renauldo is 100% at fault for causing the accident and that UES is vicariously liable for Renauldo's negligence. In that document, Defendants reserved only their right to contest medical causation and damages.

A five-day jury trial began on September 26, 2022. The jury, in turn, awarded Plaintiff damages in the amount of $5,000,000.00. On November 15, 2022, the trial court signed a final judgment which reduced the award to $3,500,000.00. Two days later, Plaintiff moved for a judgment notwithstanding the verdict and for a new trial on the issue of liability. Both motions were denied by the trial court on February 27, 2023.

Plaintiff now appeals the original judgment and the judgment denying his post-trial motions, asserting five assignments of error:

1.  The Trial Court committed reversible legal error, by failing to grant a new trial based on the Defendants' intentional act to conceal discoverable documents ordered to be produced by the trial court, which were discovered after the trial.

2.  The Trial Court committed reversible legal error, by placing First Advantage on the verdict form, and allowing Defendants to argue First Advantage's fault in closing arguments, given the Defendants' stipulation of Liability prior to trial.

3.  The Trial Court committed reversible legal error, by failing to prohibit First Advantage from being placed on the verdict form given the Defendants' failure to properly prove any contractual duty and given the Defendant's non-delegable duty to comply with the FMCSR.

4.  The Trial Court committed reversible legal error, by failing to grant Plaintiff's judgment notwithstanding the verdict ("JNOV") or in the alternative a New Trial on the issue of liability for three reasons.

5.  The Trial Court committed reversible legal error, by applying its own interpretation of the jury's verdict to the percentage of court costs owed to the plaintiff.

2

In response, Defendants answered the appeal, asserting two assignments of error:

1. The jury's $3,231,941.87 award for general damages is grossly excessive.

2. The district court erroneously prohibited defendants from adducing evidence that $318,756.72 of Mr. Levine's claimed medical expenses were "phantom charges" that neither Mr. Levine nor anyone else would ever be expected to pay.

## LAW AND ANALYSIS

In the discussion that follows, we begin by reviewing Plaintiff's second assignment of error. Next, we address Plaintiff's third, fourth, and fifth assignments of error. However, because Plaintiff's first and fourth assignments seek review of the same thing—the denial of Plaintiff's post-trial motions—those assignments are discussed together. Thereafter, we turn our attention to Defendants' first and second assignments of error.

### Plaintiff's Second Assignment of Error

Here, Plaintiff argues the trial court committed reversible legal error by adding First Advantage (a nonparty potential joint tortfeasor) to the jury verdict form and by allowing Defendants to raise the issue of First Advantage's fault during closing arguments. Plaintiff contends that "Defendants' Binding and Irrevocable Judicial Admissions and Judicial Confessions Regarding Liability" precluded UES from shifting liability to First Advantage. We agree.

Louisiana Civil Code Article 1853 addresses judicial confessions: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

In *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003, p. 5 (La. 12/3/03), 861 So.2d. 156, 159, the Louisiana Supreme Court explained that a judicial confession "has the effect of waiving evidence as to the subject of the admission." This court further specified that a party cannot contest a fact or issue if he has judicially admitted it during the proceedings. *Leprettre v. RCS, LLC*, 16-382 (La.App. 3 Cir. 11/16/16), 206 So.3d 1215.

In this matter, two weeks before the start of trial, Defendants collectively filed "Defendants' Binding and Irrevocable Judicial Admissions and Judicial Confessions Regarding Liability." The substance of this document is reproduced in its entirety as follows:

> **NOW INTO COURT**, comes Defendants, Universal Environmental Services, LLC, Renauldo Hawkins, Nationwide Agribusiness Insurance Company, and Berkshire Hathaway Specialty Insurance Company, who hereby agree, bind themselves to, and irrevocably admit and confess to the following:
>
> 1. Plaintiff, Charles Levine, and defendant, Renauldo Hawkins, were involved in an automobile accident on January 10, 2019 in Vermilion Parish, State of Louisiana.
>
> 2. Defendant, Renauldo Hawkins, was 100% at fault for causing the aforementioned accident.
>
> 3. As a result of the accident, Plaintiff, Charles Levine, filed the above suit seeking damages, including damages for personal injuries.
>
> 4. Jurisdiction and venue are proper.
>
> 5. Defendant, Renauldo Hawkins, was employed by Defendant, Universal Environmental Services, LLC, at the time of the January 10, 2019 accident.
>
> 6. Defendant, Renauldo Hawkins, was in the course and scope of his employment with Defendant, Universal Environmental Services, LLC, at the time of the January 10, 2019 accident.
>
> 7. Defendant, Universal Environmental Services, LLC, is vicariously liable for the negligent conduct of Mr. Hawkins.

8. Defendants, Renauldo Hawkins and Universal Environmental Services, LLC, reserve their right to contest medical causation and any and all damages in this matter.

Once trial began, defense counsel reiterated the terms of the confession during opening arguments:

As it has been indicated throughout the jury voir dire part of the case, and I want to emphasize to you, I'm the attorney for Universal Environmental Services. And I have the authority to tell you this, this accident was caused by our legal fault. I'm going to say it again. This accident was caused by the legal fault of Universal Environmental Services. Mr. Hawkins was negligent when he ran into the back of Mr. Levine, and he was in the course and scope of his employment when it happened. So there is no dispute about that. And any significant evidence that's been on about that is a waste of time because we have agreed with that. So the only issues in this case are medical causation and damages, fair and reasonable damages. . . . Again, you know, the only issues that you need to decide are those issues. You don't need to decide negligence. You know, we have admitted that.

Then, during Plaintiff's case-in-chief, UES corporate representative Michael Schoor reaffirmed that UES was responsible for the collision. Also during Plaintiff's case-in-chief, Defendants successfully used the confession to limit the evidence that was adduced. For example, when Plaintiff attempted to elicit evidence of UES's negligence by comparing an almost identical 2018 rear-end collision caused by Renauldo, Defendants pointed to the confession as the basis for an objection on relevancy grounds. The trial court sustained the objection and excluded the evidence.

And later during Plaintiff's case-in-chief, defense counsel reiterated: "Well, we stipulated to liability. I don't know how the distance, when he started to brake, affects—again, we're just trying to streamline." In response, the trial court stated: "And I get it. And my understanding is, too, that liability has been stipulated to. So this is a trial of damages."

5

But then, after the trial court recessed on the fourth day of trial, it met with respective counsel in chambers, off the record, to discuss the jury charges and verdict form. This was at the end of Plaintiff's case-in-chief. This is also when defense counsel first requested to add First Advantage to the jury verdict form under La.Code Civ.P. art. 1812. First Advantage was hired by UES to conduct a background check on Renauldo. Plaintiff's counsel objected to the request, but the objection was overruled by the trial court. And based on this ruling, defense counsel was then allowed to tell the jury during closing arguments that First Advantage (a nonparty) was at fault for causing the accident.

Nonetheless, following closing arguments, the trial court instructed the jury that "a stipulation or agreement by and between the attorneys as to the existence of a fact and such facts as have been judicially noticed by the Court must be accepted by you as proven evidence." The trial court then added:

> An admission by a party in a pleading constitutes a judicial confession and is full-proof against the party making it. The parties have agreed or stipulated that defendants, Renauldo Hawkins and UES, LLC, that the accident on January 10th, 2019 was due to the negligence and/or fault of Renauldo Hawkins who was driving under the authority of defendant, UES, LLC, at the time of the January 10th, 2019 accident, and that UES, LLC is liable for any negligence attributed to Renauldo Hawkins in causing the January 10th, 2019 accident. This means that both sides agree that this is a fact. You must therefore treat this fact as having been proved.

Immediately thereafter, the trial court read the confession, all of it, into the record. Yet the verdict form that was ultimately approved by the trial court asked the jury to allocate fault between Renauldo, UES, *and First Advantage*.

A few things before going further: first, the parties never stipulated to anything. A stipulation is a bilateral agreement as to the existence or nonexistence of relevant facts. And second, the confession filed by Defendants is exactly what it

6

purports to be: a judicial confession. It is a unilateral declaration of the facts contained therein. Very simply, Defendants judicially confessed to liability, and the trial court never relieved them from this confession. Thus, the trial court committed plain legal error by granting Defendants' request and adding First Advantage to the jury verdict form.[1]

But even still, Defendants argue that this issue has been waived by Plaintiff for the purpose of this appeal. In other words, Defendants argue that the record does not contain an objection by Plaintiff to the inclusion of First Advantage on the verdict form.

In support, Defendants point to *Martinez v. Soignier*, 570 So.2d. 23 (La.App. 3 Cir. 1990), *writ denied*, 574 So.2d 94 (La.1991). There, this court explained that "[a]ppellants who do not object to the special verdict form are not entitled to raise the issue on appeal." *Id*. at 30. Defendants also cite La.Code Civ.P. art. 1793(C), which states that "[a] party may not assign as error the giving or failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection."

---

[1] The confession filed by Defendants was intended to limit the triable issues to medical causation and damages. *See, e.g., Martin v. Thomas*, 21-1490 (La. 6/29/22), 346 So.3d 238. It was a strategic attempt by Defendants—albeit unsuccessful—to subsume Plaintiff's direct negligence claims against UES for negligent hiring, training, and supervision into Plaintiff's negligence claims against the employee-driver (Renauldo) for which the employer (UES) is vicariously liable. Plaintiff, on the other hand, wanted the jury to hear about the direct negligent acts of UES—hoping that the jury would give a higher damages award after hearing such evidence. Had Plaintiff stipulated to the terms of the confession, Plaintiff would have been precluded from adducing any evidence of UES's bad acts. This is why Plaintiff maintained the direct negligence claims against UES. And this is why Plaintiff wanted the jury to apportion fault between Renauldo and UES, even though UES was financially on the hook for the damages resulting from Renauldo's negligence and for the damages resulting from its own direct negligence.

The fifth circuit addressed the application of La.Code Civ.P. art. 1793(C) to jury verdict forms in *Danna v. Chestnut*, 23-131 (La.App. 5 Cir. 11/29/23), ___ So.3d ___ (2023 WL 8250043). In that case, the appellate court explained:

> In order to preserve the right to appeal an error in a verdict form or jury interrogatory, an objection must be made before the jury retires so that the court will have an opportunity to consider the objection and correct any error revealed by the objection. It is only when the instructions or jury interrogatories contain a plain and fundamental error that the contemporaneous objection requirement is relaxed and appellate review is not prohibited.

*Id*. at *3 (citations omitted).

In addition, La.Code Civ.P. art. 1635 provides as follows:

> Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

Here, we are faced with a situation where Defendants' request to add First Advantage to the verdict form and Plaintiff's objection thereto were made off the record, but both the request and objection are acknowledged by the parties. Indeed, the post-trial motions and appeal briefs show that Defendants' request to add First Advantage to the jury verdict form was made orally during an off-the-record conference between the trial court and respective counsel on the evening of the fourth day of trial. All parties concede that the request to add First Advantage was made by defense counsel during this conference. And all parties concede that counsel for Plaintiff objected at the time of the request and again the following morning. For instance, Defendants' post-trial motion for entry of judgment reads as follows:

> Defendants requested that First Advantage be placed on the special jury verdict form. After hearing objections from Plaintiff, the Court ultimately ruled that Plaintiff himself had opened the door on this issue and that Louisiana law allowed First Advantage to be placed on the form. . . . Despite this ruling, the very next day, on the morning of the last day of trial, Plaintiff again objected to First Advantage being placed on the special jury verdict form.

Restated concisely, although we do not have a transcript of Defendants' request under La.Code Civ.P. art. 1812 or Plaintiff's contemporaneous objection (because both were made off the record), we know that both happened before the jury retired. And even if Plaintiff had failed to contemporaneously object, the addition of First Advantage to the jury verdict form was a plain and fundamental error of law, meaning that the contemporaneous objection requirement is relaxed and appellate review is proper. *Berg v. Zummo*, 00-1699 (La. 4/25/01), 786 So.2d 708.

Thus, Plaintiff's second assignment of error has not been waived, and the trial court committed plain legal error in adding First Advantage to the jury verdict form.

**Plaintiff's Third Assignment of Error**

Because Plaintiff's third assignment of error also challenges the addition of First Advantage to the jury verdict form, we pretermit any discussion of this assignment based on our previous disposition.

**Plaintiff's First and Fourth Assignments of Error**

Plaintiffs first and fourth assignments of error challenge the trial court's rulings denying the motions for new trial and judgment notwithstanding the verdict. Because we find merit in Plaintiff's motion-for-new-trial argument, we pretermit any discussion of the JNOV.

Louisiana Code of Civil Procedure Article 1972(1) provides that "[a] new trial shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the

9

law and the evidence." The grant or denial of a motion for new trial is reviewed for an abuse of discretion. *Smith v. Alliance Compressors*, 05-855 (La.App. 3 Cir. 2/1/06), 922 So.2d 674.

In essence, Plaintiff asserts that the trial court abused its discretion by failing to grant a new trial to correct the jury's assignment of 200% liability. We agree.

Here, the jury's September 30, 2022 verdict reads in relevant part as follows:

1. Do you find that the Defendants, Universal Environmental Services, LLC ("UES"), and Renaldo [sic] Hawkins, caused the subject collision on January 10, 2019?



Yes

2. Do you find that UES committed separate independent acts of fault?

Yes ✓   No __

3. What percentage of fault do you assess Renaldo [sic] Hawkins, UES, and First Advantage for causing the subject collision?

Renaldo [sic] Hawkins   100%
UES                      70%
First Advantage          30%

The jury further found that Mr. Levine suffered damages as a result of the collision and awarded the following sums:

| | |
|---|---|
| Past medical expenses | $529,872.13 |
| Future medical expenses | $550,000.00 |
| Past lost earnings | $188,186.00 |
| Future loss of earning capacity | $500,000.00 |
| Past pain and suffering | $1,000,000.00 |
| Future pain and suffering | $500,000.00 |
| Past mental and emotional anguish | $300,000.00 |
| Future mental and emotional anguish | $250,000.00 |
| Past and future disability | $431,941.87 |
| Past and future loss of enjoyment of life | $750,000.00 |
| TOTAL | $5,000,000.00 |

Then, on November 15, 2022, the trial court rendered its final judgment which arbitrarily reduced the damages award by 30%:

**IT IS ORDERED, ADJUDGED AND DECREED** that there be judgment in favor of Plaintiff, Charles Levine and against Defendants, Nationwide Agribusiness Insurance Company, Universal Environmental Services, LLC, and Renauldo Hawkins, in solido, in the full principle sum of NINE HUNDRED NINETY THOUSAND EIGHT HUNDRED NINETY-SIX and 40/100 DOLLARS ($990,896.40), together with legal interest on said sum from judicial demand until paid.

**IT IS ORDERED, ADJUDGED AND DECREED** that there be judgment in favor of Plaintiff, Charles Levine and against Defendants, Berkshire Hathaway Insurance Company, Universal Environmental Services, LLC, and Renauldo Hawkins, in solido, in the full principal amount of TWO MILLION FIVE HUNDRED NINE THOUSAND ONE HUNDRED THREE DOLLARS and 60/100 DOLLARS ($2,509,103.60) together with legal interest on said sum from judicial demand until paid.

In our view, the addition of First Advantage to the verdict form led to the jury's erroneous assessment of 200% liability. The assessment of 200% liability is a substantial error on the face of the verdict form. And instead of sending the jury back to correct this error, the trial court compounded the problem by imposing its own interpretation to the jury's fault assessment and entering a judgment which arbitrarily reduced the damage award by 30%—from $5,000,000.00 to $3,500,000.00—resulting in an additional layer of error. Plaintiff then filed a motion for new trial, giving the trial court yet another chance to correct the above errors. But the trial court denied this motion and in doing so abused its discretion.

At this point, we are left with two options. The first option is to remand the case to the trial court for a new trial on liability. The second is to review the record de novo and allocate fault between the proper parties: Renauldo and UES. In the interest of judicial economy, and because the record is complete, we will proceed with option number two.

Turning now to the record evidence. In summary, the evidence shows that Renauldo caused the accident by plowing his truck into the back of Plaintiff's car at

11

approximately sixty-five miles per hour. Renauldo was distracted. He was looking away from the road and reaching down in his truck to retrieve a water bottle when the accident occurred. Renauldo was in the course and scope of his employment with UES, and UES is vicariously liable for the damage caused by Renauldo's negligence.

But the evidence also shows that UES was required to conduct a background check on Renauldo. UES contracted this work out to First Advantage. First Advantage, in turn, failed to conduct a complete and timely background check on Renauldo, and UES failed to follow up with First Advantage or conduct its own vetting, resulting in a violation of UES's responsibilities under various regulations. Had a proper background check been conducted, UES would have discovered that Renauldo had six prior accidents and three prior license suspensions. Not only does the evidence show that UES was negligent in hiring Renauldo, but it also shows that UES was negligent in training and supervising its employee.

Thus, the jury verdict on liability is vacated, and following our de novo review of the record, we assign 75% fault to Renauldo and 25% fault to UES.

**Plaintiff's Fifth Assignment of Error**

In his fifth assignment of error, Plaintiff seeks review of the award of court costs. We review a trial court's award of costs under the abuse of discretion standard. *McDaniel v. Carencro Lions Club*, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945, *writ denied*, 06-1998 (La.11/3/06), 940 So.2d 671.

Here, the trial court assessed costs based on the jury's erroneous apportionment of liability and then by applying its own interpretation to that verdict. This meant that the costs owed to Plaintiff were arbitrarily reduced by 30%. For the reasons given in our discussion of Plaintiff's fourth assignment of error, the trial

12

court abused its discretion in its award of court costs.  We therefore amend the judgment and cast Defendants with 100% of the trial court costs.

**Defendants' First Assignment of Error**

Defendants initially assert that the jury's general damage award of $3,231,941.87 to Plaintiff is grossly excessive.

General damages are those that are inherently speculative in nature and cannot be fixed with mathematical certainty. *Anderson v. Welding Testing Lab., Inc.*, 304 So.2d 351 (La.1974).  The standard of review for a general damages award is abuse of discretion. *Id*.

The Louisiana Supreme Court recently revisited the question of how appellate courts are to review general damage awards in *Pete v. Boland Marine and Manufacturing Company, LLC*, 23-170 (La. 10/20/23), ___ So.3d ___ (2023 WL 6937381).  There, the supreme court revised the appellate court's analysis by declaring that an appellate court must consider relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion. Before this decision, appellate courts considered relevant prior damage awards only after finding an abuse of discretion, a method which the supreme court found overly subjective and, as a result, meaningless.

The supreme court went on to explain that a review of prior awards is a starting point in evaluating whether a general damage award is an abuse of discretion, since courts must also consider the specific facts and circumstances of each case.  Specifically, the court explained:

> We do not abandon the two-step analysis for the appellate review of a general damage award but modify the analysis as follows.  The question of whether the trier of fact abused its discretion in assessing the amount of damages remains the initial inquiry.  However, to evaluate this issue, an appellate court is to include a consideration of prior awards in

similar cases, as well as the particular facts and circumstances of the case under review. If an abuse of discretion is found, the court is to then also consider those prior awards to determine "the highest or lowest point which is reasonably within that discretion."

*Id*. at \*6 (citations omitted).

Plaintiff suffered significant, life-changing injuries from the 2019 accident. Before the crash, Plaintiff was a healthy, fit, and active single father working two jobs. By all accounts, he was a beloved member of the Vermilion Parish Sheriff's Office and an involved community member. Before the accident, he had not suffered any injuries to his spine, shoulders, or lumbar region.

After the accident, Plaintiff underwent three surgeries: a lumbar fusion, implantation of a spinal cord stimulator, and a shoulder surgery. At the time of trial, he was scheduled to undergo a cervical fusion. He struggles with activities of daily living. Because of a head injury caused by the accident, he also suffers from chronic headaches and dizziness which will affect him for the rest of his life. Plaintiff's treating physicians tied his injuries to the accident, and Defendants did not call any witnesses to contradict this testimony.

Compounding these physical hurdles, Plaintiff lost his job. He will never again be able to work as a police officer. And all this has caused Plaintiff to suffer from severe depression with suicidal thoughts.

Although Defendants admit that Plaintiff suffered serious back, neck, and shoulder injuries which caused post-traumatic stress disorder, headaches, and major depression, they contend that Plaintiff's injuries are not life threatening and were effectively treated with surgeries and a spinal cord stimulator. Defendants further note that Plaintiff still has his mental faculties and is able to care for himself.

The cases offered by Defendants are largely distinguishable in that they fail to address awards in "similar cases": they are highly dissimilar in both fact and degree of injury.[2] Neither did we find the cervical and lumbar cases offered by Defendants to be wholly persuasive as they did not reflect the range of injuries and life-altering results suffered by Plaintiff. The most relevant case cited by Defendants was *Jeffries v. Prime Ins. Co.*, 21-161 (La.App. 3 Cir. 11/3/21), 334 So.3d 761, *writs denied*, 21-1811, 21-1817 (La. 2/22/22), 333 So.3d 433, 436. There, this court affirmed a general damage award of $1,525,808.00 for back injuries which resulted in surgery with future recommended treatment. That case, however, did not involve a head injury or any mental health issues.

By contrast, Plaintiff argues that the jury award is wholly supported by both the totality of his injures and previous opinions. Plaintiff cites *Franks v. State Nat'l Ins. Co.*, 22-169 (La.App. 3 Cir. 1/25/23), 355 So.3d 1174, *writ denied*, 23-259 (La. 4/18/23), 359 So.3d. 512, wherein this court affirmed a jury's general damage award of $2,700,000.00. In that case, a wheelchair-bound plaintiff was injured in a motor vehicle accident and suffered a back injury while being medically transferred to a rehabilitation unit following a stroke. The accident caused the plaintiff's pre-

---

[2] *DeRosier v. S. La. Contractors,* 583 So.2d. 531 (La.App. 3 Cir.), *writ denied*, 587 So.2d. 700 (La.1991) (eighteen-year-old plaintiff with a permanent brain injury assessed with 75% fault); *Chamberlain v. State through Dept. of Transp. and Dev.*, 91-1942 (La.App. 1 Cir. 3/11/94), 633 So.2d 871 (seventeen-year-old near drowning victim with complicated capacity issues); *Odom v. City of Lake Charles*, 00-1050 (La.App. 3 Cir. 1/31/01), 790 So.2d 51, *writ denied*, 01-1198 (La. 6/22/01), 794 So.2d 787 (one vehicle accident in which the driver was apportioned fault and in a vegetative state); *Wingfield v. State ex rel. Dept. of Transp. and Dev.*, 01-2668, 01-2669 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, w*rits denied*, 03-313, 03-339, 03-349 (La. 5/30/03), 845 So.2d 1059, *cert. denied*, 540 U.S. 950, 124 S.Ct. 419 (2003) (court reduced award to plaintiff who was in a permanent minimally conscious state because he was not fully cognizant of his injuries and award was duplicative); *Bowie v. Young*, 01-715 (La.App. 3 Cir. 3/20/02), 813 So.2d 562 (paralyzed plaintiff receives increased award); *Boxie v. Lemoine*, 07-905 (La.App. 3 Cir. 7/16/08), 988 So.2d 309, *writs denied*, 08-2014, 08-2019 (La. 11/10/08), 996 So.2d 1071 (quadriplegia resulting from a stroke during surgery).

existing condition to become unstable, resulting in two cervical fusions. His treating physician testified that he would suffer from headaches and balance issues for the remainder of his life.

Plaintiff also adjusted the damage awards in a number of factually similar cases to apply inflation and cost of living increases to calculate more accurate current-day numbers. For example, in cases involving serious cervical and lumbar injuries similar to Plaintiff's injuries, the general damage awards were adjusted to levels within the range of $1,000,000.00 to $4,400,000.00.[3] Plaintiff further cites to general damage awards for post-traumatic stress disorder which were adjusted to $500,000.00 to $1,600,000.00.[4] Plaintiff also points to general damage awards for shoulder injuries with surgery in the adjusted range of $795,000.00 to $878,000.00.[5]

Based on the totality of the circumstances, particularly Plaintiff's physical, mental, and life altering injuries, we cannot say that the jury abused its discretion in awarding Plaintiff $3,231,941.87 in general damages.

**Defendants' Second Assignment of Error**

Finally, Defendants seek review of the trial court's decision to grant Plaintiff's motion in limine excluding "collateral source" evidence. Motions in limine are also reviewed under the abuse of discretion standard. *Noel v. Noel*, 15-37 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, *writ denied*, 15-1121 (La. 9/18/15), 178 So.3d 147.

---

[3] *Andrews v. Mosley Well Serv.*, 514 So.2d 491 (La.App. 3 Cir.), *writ denied*, 515 So.2d 807 (La.1987); *Hall v. Landstar Ranger, Inc.*, 6:18-410 (W.D. La. 5/22/20).

[4] *Thompson v. Crawford*, 17-1400 (La. 11/13/17), 229 So.3d 451; *Warren v. Bergeron*, 599 So.2d 369 (La.App. 3 Cir.), *writ denied*, 604 So.2d 995 (La.1992).

[5] *Vance v. Int'l House of Pancakes, LLC*, 20-33 (La.App. 3 Cir. 10/28/20), 306 So.3d 529, *writ granted and reversed on other grounds*, 20-1373 (La. 2/17/21), 310 So.3d 550; *Neal v. Wascom*, 16-1230 (La.App. 1 Cir. 4/12/17), 218 So.3d 129.

According to Defendants, although Plaintiff claims he incurred $529,872.13 in past medical expenses, the Vermilion Parish Sheriff's Office was actually billed $143,905.04 because of its pricing agreement with providers. Defendants claim that neither Plaintiff nor the sheriff's office will ever be liable for the remaining "phantom charges," and that all of Plaintiff's medical expenses were paid by the sheriff's office under a self-insurance plan administered by United Healthcare with Plaintiff paying no premium for the coverage. In a nutshell, Defendants contend that the contractual discounts negotiated between Plaintiff's providers and United are not a collateral source, and that the trial court thus erred in allowing evidence of the higher amount.

Significantly, this court expressly rejected Defendants' arguments in *Derrick v. Lafayette City Parish Consolidated Government,* 21-392 (La.App. 3 Cir. 12/08/21) (unpublished opinion). There, this court explained:

> We find an employer's relationship to its employee supports the application of the collateral source rule just as the supreme court found PCF's relationship to a qualified healthcare provider does. As the supreme court found in *Thomassie* [*v. Amedisys Louisiana Acquisitions*, 20-1229 (La. 01/21/21), 308 So.2d 1165], we find that Mr. Williams diminished his patrimony to obtain insurance benefits, and the collateral source rule applies[.]

The record here shows that Plaintiff received health insurance as a benefit of his employment with the Vermilion Parish Sheriff's Office. The record also shows that Plaintiff paid a $1,000.00 deductible and $5,000.00 in expenses to Lafayette Surgical Specialty Hospital for treatment related to this accident and that Plaintiff paid $95.00 per month in premiums for the insurance coverage.

Put simply, because Plaintiff diminished his patrimony to obtain insurance benefits, the collateral source rule applies. We find no abuse of discretion in the trial court's decision to grant Plaintiff's motion in limine.

17

## DISPOSITION

The judgment of February 27, 2023, which denied Plaintiff's post-trial motions, is reversed, and fault is apportioned as follows: Renauldo 75% and UES 25%.

The judgment of November 15, 2022, is amended to reflect the above apportionment of fault, to reflect total damages owed to Plaintiff in the amount of $5,000,000.00 (not $3,500,000.00), and to reflect that Defendants are assessed with 100% of all trial court costs. This judgment is affirmed in all other respects.

And the costs of this appeal are assessed to Defendants.

**REVERSED IN PART;**
**AFFIRMED AS AMENDED.**